UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CATHERINE EZELL | § | |
| | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| THE CITY OF FREEPORT, TEXAS, | § | |
| JEFFREY MICHAEL PENA, in his | § | CAUSE NO. |
| individual and official capacities, JERRY | § | |
| FRANK CAIN, in his official capacity, | § | |
| GEORGE MATAMOROS, in his official | § | |
| capacity, JARVIS DAVIS, in his official | § | |
| capacity, and WINSTON ROSSOW, in | § | |
| his official capacity. | § | |
| | § | |
| *Defendants* | § | |

COMPLAINT

COMES NOW Plaintiff Catherine Ezell, an individual, by and through her undersigned

counsel, make her complaint against Jeffrey Michael Pena, in his official and individual capacities,

and the City of Freeport, Texas, states and alleges the following:

I.      INTRODUCTION

1.    Plaintiff Catherine Ezell brings this action for breach of contract and for monetary damages

to address the deprivation of her civil rights secured to her by 42 U.S.C. § 1983, violations

of the Due Process Clauses of the Fourteenth Amendment to the United States Constitution,

violation of the protections provided by the First Amendment of the United States

Constitution, Defamation.

II.      DISCOVERY CONTROL PLAN

2.    Discovery in this matter will be conducted in accordance with the Federal Rules of Civil Procedure, including Rules 26 through 37, and all applicable local rules of the Southern District of Texas..

### III.    PARTIES

3.    Plaintiff, Catherine Ezell, is the former Finance Director of Finance for Freeport, Texas. She is an individual who resides at 904 Atlantic Avenue, Boling, Texas 77420. The last three digits of Ms. Ezell's Texas Driver's License and Social Security Numbers are 786 and 333, respectively.

4.    Defendant, City of Freeport, Texas is a home rule city and may be served by serving Mayor Jerry Frank Cain at 1706 West 10th Street, Freeport, Texas 77541 or by serving City Secretary, Clarisa Fernandez,  at 1201 North Avenue H, Freeport, TX 77541.

5.    Defendant, Jeffrey Michael Pena, is the current City Council Member representing Ward A who may be served at 224 West Park Avenue, Apt. 200, Freeport, Texas 77541 or wherever he may be found.

6.    Defendant, Jerry Frank Cain, is the current Mayor of Freeport, Texas may be served at 1706 West 10th Street, Freeport, Texas 77541 or wherever he may be found.

7.    Defendant, George Matamoros, is the current City Council Member representing Ward C who may be served at 1722 North Avenue O, Freeport, Texas 77541 or wherever he may be found.

8.    Defendant, Jarvis Davis, is the current City Council Member representing Ward B and who may be served at 112 Brazos Landing Court, Freeport, Texas 77541 or wherever he may be found.

9. Defendant, Winston Rossow, is the current City Council Member representing Ward D who may be served at 511 South Avenue D, Freeport, Texas 77541 or wherever he may be found.

## IV.   JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

11. This Court has supplemental jurisdiction over Plaintiff's related state law claims, including breach of contract and defamation, pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy under Article III of the United States Constitution.

12. Personal jurisdiction is proper as all Defendants are residents of, or conduct substantial business within, the State of Texas.

13. Venue is proper in the United States District Court for the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in Brazoria County, Texas, which lies within this judicial district and division.

   a. The amount in controversy exceeds $75,000, exclusive of interest and costs, satisfying the jurisdictional threshold under 28 U.S.C. § 1332, and the claims for damages are not speculative, as outlined in the Damages section of this Complaint.

14. No other court would provide a more convenient forum for the resolution of this dispute. All events, parties, and key witnesses are situated within this division.

3

## V.   HISTORICAL AND FACTUAL BASIS

15.   On January 19, 2021,  Integrated Architecture & Design, LLC, ("iAD") through Brent Bowles, presented to the City Council a preliminary architectural report for the City Hall renovations. Although the full renovation proposed by iAD was estimated for the project to cost approximately four million dollars, it also proposed a limited renovation aimed at bringing the building in line with code. That limited renovation project was projected to cost approximately one million, four hundred thousand dollars.

16.   On July 14, 2022, Plaintiff Ezell penned an anonymous letter to Freeport Mayor Brooks Bass describing the pressures she and other City staff members were experiencing with Councilman Pena.

17.   On January 9, 2023, Plaintiff read the July 14, 2022 anonymous letter she had previously sent to Mayor Bass (Exhibit 2 – July 14, 2022 Letter) to City Council while it was in public session regarding the toxic work environment created by Councilman Pena. (Exhibit 3 - City Council Regular Meeting Minutes January 9, 2023.) Councilman Pena was subsequently censured for on that day.

18.   On March 7, 2023, the City of Freeport's Invitation to Bid was first published in The Facts, a newspaper serving the Brazosport area. This Invitation to Bid was also published on March 14, 2023, with the bid originally required to be presented no later than 10:00 a.m. on Tuesday, April 4, 2023.

19.   The original bid package encompassed the Invitation to Bid as Exhibit A, a pre-printed form letter Bid Proposal as Exhibit B, and the iAD Project Manual for the Freeport City Hall Limited Interior Renovation which encompassed 350 pages. Exhibits A and the

Project Manual were prepared by iAD. (These Exhibits have been excluded for the purpose of this complaint.)

20. On March 28, 2023, the City of Freeport filed Addendum Number One which introduced clarifications, changes, modifications, and additions to the bid documents created February 28, 2023.

21. On March 30, 2023, the City of Freeport filed Addendum Number Two with additional clarifications, changes, modifications, and additions to the bid documents created February 28, 2023. Additionally, Addendum Number Two extended the original Bid Due Date to Wednesday, April 26, 2023.

22. On April 26, 2023, the Bid Opening occurred with Covarrubias Remodeling Service, LLC, having the lowest, most responsive bid with a bid of $1,085,678.66.

23. On June 5, 2023, during the City of Freeport Regular Council Meeting after Executive Session, the council voted and approved the project to be awarded to Covarrubias. Tim Kelty, City Manager, stated twice that City Staff would work with the City Attorney to "develop the Contract."

24. Upon receiving notice of the contract award, Covarrubias began declining remodeling and construction projects from other clients in order to prioritize and fulfill its obligations to the City of Freeport.

25. On June 23, 2023, Covarrubias was advised that the planned asbestos removal was scheduled to begin July 5, 2023, and was projected to be completed on July 19, 2023.

26. On July 12, 2023, Covarrubias and the City of Freeport entered into a valid, enforceable, and binding contract "the Contract."

27. Covarrubias Remodeling Service, LLC agreed to perform remodeling services in full consideration for the Contract. In exchange for Plaintiff agreeing to perform remodeling services, the Defendant, City of Freeport, Texas agreed to payment in the amount of $1,085,678.66.

28. On July 21, 2023, Covarrubias emailed a down payment request to Catherine Ezell, the City Finance Director.

| | |
|---|---|
| **From:** | Carlos Covarrubias <carloscovarrubias@live.com> |
| **Sent:** | Friday, July 21, 2023 5:06 PM |
| **To:** | Cathy Ezell |
| **Subject** | Down payment |
| **Attachments:** | CRS Freeport down payment.pdf |

Cathy, attached is the broken-down list for the down payments for the materials and subs.

Let me know if this is possible, because A/C takes 30 weeks to arrive (yes, that long!) The sooner we buy it the better.
thank you
Monica

*Thank you for the opportunity*
*If you have any questions please call me or e-mail me*
*Carlos Covarrubias*
*979 70971.13*

# Covarrubias Remodeling Service, LLC

**Estimate**

| | |
|---|---|
| Date: | 7/21/2023 |
| | 283 |
| Invoice #: | |
| For: | Down payment |
| Bill To: | Freeport City hall renovations |

215 W Plantation Dr
Clute, TX 77531

| DESCRIPTION | | | AMOUNT |
|---|---|---|---|
| Down payment to start renovations | | | |
| Mold job | 33% | $ | 54,575.78 |
| Glazing | 33% | $ | 13,327.40 |
| Masonry cleaning | 33% | $ | 2,589.17 |
| Plumbing | 33% | $ | 14,187.59 |
| Electric | 33% | $ | 32,583.33 |
| A/C | 50% | $ | 109,517.88 |
| Material & labor | 33% | $ | 118,272.55 |

~~Check Request~~

Date: 7/20/2023

PO/Acct # 020382

Desc: City Hall 1000

Signature: _____ 7/20/2023

| | | | |
|---|---|---|---|
| **SUBTOT** | $ | | 345,053.70 |
| **O&P** | | | 0% |
| **O&P Total** | $ | | - |
| **OTHER** | $ | | - |
| **TOTAL** | $ | | **345,053.70** |

Make all checks payable to Covarrubias Remodeling Service, LLC.
If you have any questions concerning this invoice, contact Office
PH.979 316 3621

THANK YOU FOR YOUR BUSINESS!

7

29.    By email on July 26, 2023, City Manager Tim Kelty informed City Attorney David Olson that the Purchase Order for the project had been approved.

**Purchase Order Requisition Form**    r.i    FREEPORT

| | |
|---|---|
| Department: | Administration |
| Commodity/Service: | City Hall Renovations |
| Vendor Name: | Covarrubias Remodeling Service LLC |
| Vendor Contact: | Carlos Covarrubias |
| Phone# or Email: | |

Amount:  $1,085,678.66

Hub Vendor: cg)Yes D No

**Type of Procurement**

O    Under $3k - only one quote needed.

Sealed Bids/RFP: Bid/RFP# _____

O    Interlocal/Cooperative Contract: Contract# _____
O    This purchase is exempt from competitive bidding and HUB requirements per the following:
    D    Single/Sole Source (Documentation attached)
    D    Professional Services as defined by Sec. 2254.002 (2) of Government Code
    D    Emergency Purchase due to: _____
    ☐    Exempt Per the following# under Sec. 252.022 of Local Government Code:

_____

O    Three Quotes. The following other two vendors were contacted (quote attached):

| | |
|---|---|
| Vendor Name: | _____ Price Quoted: _____ |
| Phone# or Email: | _____ Hub Vendor: ☐Yes ☐No |
| Vendor Name: | _____ Price Quoted: _____ |
| Phone # or Email: | _____ Hub Vendor: ☐Yes ☐No |

Per state law, at least 2 historically underutilized vendors (HUBs) within Brazoria County must be contacted, if available. If 2 HUB vendors were not contacted, confirm the following:

No applicable Brazoria County HUBs were identified.

Additional Comments:    Approved by City Council June 5, 2023

**Account Detail**

| Account# | Account Description | Acct. Bal | Line Item Description | Amount |
|---|---|---|---|---|
| 66-410-899 | Capital Outlay | 775,855.82 | City Hall Renovation | 775,855.82 |
| 21-410-899 | Capital Outlay | 750,000.00 | City Hall Renovation | 309,822.84 |
| | | | | |
| | | | | |

Route Invoices to: _____

**Approvals**

Dept. Head [signature]    Date: 7/26/23    City Mgr. _____  Date: _____
Finance [signature]    Date: 7/26/2023    Council Approved, Meeting Date: _____

8

30. On July 28, 2023, City Manager Tim Kelty notified City Attorney David Olson that on that date, payment had been made to Covarrubias in the amount of $345,053.70.



31. On August 2, 2023, Covarrubias transferred payment by wire the sum of $95,232.94 to Essential Air as a downpayment for the air system.

32. On August 3, 2023, Covarrubias informed the City Manager that the air conditioner parts would not arrive for seven months.

> Hello Mr. Kelty,
>
> We just have the elevator unit checked by the professionals (this is the third person checking on it), they are not giving us good expectations on the replacement of the unit. I am asking for quotes to repair or replace and see what is more convenient for y'all; and as well the A/C is taking more than 7 months for the parts to get here.
>
> I'll keep you informed.

33. On August 29, 2023, Covarrubias paid Jose Luis Perez of CRS Windows Texas a 50% deposit in the amount of $14,998.00 for windows installation.

34.    On August 31, 2023, Covarrubias informs City Manager, Tim Kelty, that the abatement and piping changes had delayed completion date to December 2024. That same day, Covarrubias received correspondence from Brent Bowles stating that since the city had not yet issued a Notice to Proceed, he should not perform any work on the project until new timelines had been established, and a formal kick-off meeting could be held. (CRS Delay Letter)

> Carlos,
>
> Good afternoon. Thank you for your time earlier this afternoon to meet Lance & I at the jobsite to discuss a few items.
>
> At this point I understand that the City has not issued a notice to proceed with the project; therefore please do not proceed with any work on this project until we can arrange for the notice to proceed from the City, establish proper start dates and timelines, and we can have a formal kickoff meeting to verify that all of the correct procedures will be followed throughout the duration of the project.
>
> In the meantime, please refer to the Project Manual/Specifications for this project and let me know if you have any questions.
>
> Finally, please forecast a few dates/times that you will have available the week of September 11 to meet with the City and myself to review things and consider the steps moving forward.
>
> Best regards,
>
> Brent Bowles, AIA

35.    On October 4, 2023, Councilman Pena made a false posting on Facebook stating that Catherine Ezell had altered a contract between Starbucks and the Freeport Economic Development Corporation. In response, Catherine Ezell made a formal complaint to Tim Kelty, the City Manager, regarding her inability to respond to that accusation, explaining that she was prohibited from making a response to Pena's publication due to the city's personnel policy which states that any response could result in disciplinary action including termination. Catherine Ezell complained of a toxic work environment.

36.    Subsequent to that compliant, Kacey Roman, the Building Official, also made a complaint that Councilman Pena had created a toxic work environment.

10

37. On October 10, 2023, Tim Kelty transmitted another email correspondence to David Olson, City Attorney, regarding the City Hall timeline: Another meeting was held with both Carlos and his wife Monica who manages all the office work, on October 10, 2023. In attendance were Tim, Lance, Catherine, and Brent. "At that meeting, we informed Covarrubias that we intended to terminate his contract and rebid the project with the additional asbestos remediation included in the scope. Monica advised us that at best they might break even on the contract. We again expressed concern that he had still not provided the required submittals, nor the Performance or Payment bond. We again asked if any of the funds previously paid had been spent and again we were assured that they had not been. They agreed to return the funds."

38. On October 11, 2023, Covarrubias emailed Tim Kelty requesting whether it was possible to start the glazing on the windows, stating that the materials to do so had already been purchased, the equipment rented, and the rental cost unredeemable if they failed to perform at that time. Covarrubias requested Kelty approve the job to avoid the financial loss.

39. At 8:55 am on October 12, 2023, the City Manager replies that he would be willing to work with him, but that Covarrubias must return the funds he was mistakenly paid.

> Carlos,
> We will work with you on this absolutely! Please send me a quote and scope for the work proposed. The funds incorrectly paid to you will need to be repaid before work could start.
>
> Thanks,
>
> Tim

40. October 16, 2023. City Manager Tim Kelty reminds City Council that due to the fact that the project had been delayed for a period of five months due to the fact that the asbestos abatement was taking longer than anticipated due to a significant amount of additional

11

asbestos having been identified. Kelty claimed that since the contract was awarded in July and the abatement had taken longer than thirty days, the City was cancelling the contract. No contract cancellation was ever proffered to Covarrubias. Councilman Pena asks whether Covarrubias had completed any of the work. Kelty falsely stated, "No."

41.    On November 3, 2023, Carlos Covarrubias met with Tim Kelty, the City Manager, and Catherine Ezell, City Finance Manager. Covarubbias was accompanied by legal counsel. During the course of this meeting, it was agreed that Kelty would compile and forward "a list of all outstanding issues to Covarrubias' counsel who would review the need for compliance and assist in the turnaround of any reporting shortcomings. Parties to assist Covarrubias were immediately retained to resolve those compliance issues.

42.    On November 6, 2023, Plaintiff read a prepared statement to City Council while it was in public session regarding the toxic work environment created by Councilman Pena. (Exhibit 4 - Ezell Complaint to Tim Kelty October 4, 2023).

43.    After having conferred with the Plaintiff in closed session, City Council returned to regular session voting 4 to 1 to hire David Luther, a private investigator, to investigate the claim. (Exhibit 5 - City Council Meeting Minutes- November 6, 2023).

44.    At 10:21 am on November 14, 2023, after having received an additional request for the promised documentation, Kelty stated that he had spoken to David Olson, the city's legal counsel regarding the matter and that the list would be forthcoming.

Good morning Carlos,

I spoke with David Olson yesterday morning and he is waiting for some information from Brent Bowles, in order to finalize that letter. I just also spoke with Brent and he is on a job in Louisiana and will be back tomorrow morning, and will get that information to David first thing. I expect will have something for you and Mr. Thomas by the end of the day tomorrow.
Thanks,
Tim

45.    That promised correspondence was never received.

46.    On November 17, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A", a Facebook page managed and controlled by City Councilman Jeff Pena, stating Tim Kelty, the City Manager had made an illegal wire transfer to Covarrubias.

47.    On that same day, due to the false statements made by Tim Kelty, Jeff Pena, and the knowing silence of the City Attorney, David Olson, the Brazosport Facts published the following:

FREEPORT — The contractor in charge of Freeport City Hall renovations is not holding up its end of the bargain, city officials said, leaving the city in a tight spot.

More than $345,000 has been paid out to the contractor, but no work has been done — and council members question whether the money should have gone out at all.

"The payment was made because he submitted an invoice and explained there was a seven-month lead time for equipment. It should not have been made but was because of the lead time," Freeport City Manager Tim Kelty said.

The payment in question was to Covarrubias Remodeling Service for $345,053. It was made July 26.

"It was a mistake," Councilman Winston Rossow said. "I believe Tim always has the city's best interests in mind."

The problem arises from the fact the city has yet to receive a performance and payment bond from Covarrubias and a notice to proceed has not been issued from the city to Covarrubias.

"Our next step is the city attorney is working on a letter regarding outstanding items and deadlines for them," Kelty said. "If Covarrubias does submit those items, we will move forward and will not need to terminate the contract and any money that's been paid will go toward the fulfillment of that contract."

When City Council first learned of the problem, Councilman George Matamoros said, he was uncomfortable with the situation.

When City Council first learned of the problem, Councilman George Matamoros said, he was uncomfortable with the situation.

"Tim knew that he gave them the money, but when he made a statement about that, he didn't include that information," Matamoros said. "This is an unfortunate situation for the city. There are protocols that should have been followed and were not."

Mayor Brooks Bass said he is concerned about the contract.

"I want to make sure everything is done in accordance with the contract," he said.

Covarrubias was the low bidder at $1.085 million in April when the city opened proposals for the City Hall renovations. The city and the contractor signed the contract for work July 19.

The project includes the renovation of the existing Freeport City Hall on Second Street, including about 11,400 square feet of the ground floor and 7,102 square feet of the second floor, according to the city's contract with Covarrubias.

The renovation work is to include toilets, mold remediation, waterproofing the exterior to prevent water infiltration, the elevator and the HVAC system, according to the contract.

Covarrubias was to begin work on receipt of a notice to proceed and have 12 months in which to finish the project, according to the contract.

Before any work was to take place, it was Covarrubias' responsibility to provide the city and its architecture firm, iAD Architects, with the performance and payment bond.

That has not happened.

"In my mind, this is a big mistake that should have never happened, but there's going to need to be some type of sanction for allowing this to happen," Matamoros said.

If Covarrubias does not provide the performance and payment bond, Kelty said the city will have to terminate the contract.

14

"If we do terminate the contract, any equipment he has ordered will be used for the project with the next contractor," he said.

Councilmen Jerry Cain and Jeff Peña did not respond to requests for comment.

48.     November 20, 2023. During the Freeport City Council Regular meeting, Councilman Pena asked if Covarrubias had performed any work on City Hall since July or since the last City Council Meeting and whether any additional funds had been paid to Covarrubias since July. Again, Kelty falsely stated, "No."

49.     November 21, 2023, Freeport citizen Sam Reyna states that Tim Kelty had admitted the advance of $345,000 paid to Covarrubias was his problem, that he was not getting it fixed, and that he was unable to get the funds returned. Kelty claimed that Covarrubias had retained legal counsel; that the money was already gone and there was nothing he, as City Manager could do about it. Kelty stated how much money would be paid to attorneys in an attempt to regain the funds. Mr. Reyna claimed Kelty had been under investigation by the Department of Justice for violation of anti-trust laws.

50.     On November 21, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A", a Facebook page managed and controlled by City Councilman Jeff Pena, stating again that Tim Kelty, the City Manager, and Catherine Ezell, had made an illegal wire transfer to Covarrubias.

51.     On November 25, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page falsely claiming the wire transfer was sloppy and illegal; that the equipment had never been ordered; that the "money just went into Carlos' pocket and maybe someone else's too;" and that he had information provided to him by

15

citizens and city hall employees and getting subpoenas for their phone records and text messages. Pena further claimed to have a testimonial letter from anonymous sources as a smoking gun; that it was an open and shut case; gross negligence, that there had been a five month long coverup. Pena falsely claimed that illegal acts had been admitted to. Additionally, he claimed that Tim Kelty and Catherine Ezell knowingly lied "from October 16th until now." Pena then published the down payment document provided to Kelty stating no equipment had been listed. Pena falsely claimed that no work had been performed since July 28th; that no permit or bond had been obtained, and that the coverup was sloppy. Lastly, Pena claimed to have been tipped off by residents and City employees. Pena demanded Kelty and Ezell resign.

52. On November 29, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page falsely claiming illegal wires were made by Kelty and Ezell and that residents were inquiring with him how Ezell still has her job after the illegal wire transfer. Pena additionally claimed that Mayor "Truth Bombs" Bass and the City Council were covering up for Ezell and that Kelty made an illegal gift to his buddy Covarrubias.

53. On November 29, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page falsely claiming illegal wires were made by Kelty and Ezell and that residents were inquiring with him how Ezell still has her job after the illegal wire transfer.

16

54.    After the Closed Executive Session, Mayor Bass makes a motion to have Olson and Olson send a letter of intent to terminate the contract with Covarrubias, seconded by Councilman Pena with all present voting in agreement. No letter of intent was tendered to Covarrubias.

55.    Later, on December 4, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page that there was more information that needed to be made public and encouraged listeners to "stay tuned."

56.    On December 5, 2023, the Brazosport Facts published:

FREEPORT — The city plans to terminate its agreement for City Hall renovations following issues with the contractor.

Following a closed session Monday night, Mayor Brooks Bass made a motion to have Olson & Olson, the city's law firm, send a letter of intent to terminate the contract with Covarrubias.

Council suspended City Manager Tim Kelty during a special City Council meeting on Nov. 21 because of a $345,000 payment made to the company for equipment which had a seven-month lead time. The payment was made July 26, before the city had received a performance and payment bond from Covarrubias and before the city had given the contractor a notice to proceed.

The city's contract with Covarrubias for the renovations barred the company from doing any work or receiving any payment until it met bonding requirements.

City Council voted 4-0 this week to terminate the contract. City Councilman George Matamoros was not present at Monday's meeting.

Covarrubias was the low bidder at $1.085 million in April when the city opened proposals for City Hall renovations. The city and the contractor signed the contract for work July 19.

The project includes the renovation of the existing Freeport City Hall on Second Street, including about 11,400 square feet of the ground floor and 7,102 square feet of the second floor, according to the city's contract with Covarrubias.

A special meeting has been scheduled for Dec. 13. The agenda is not yet available, but Bass told The Facts there will be two topics of conversation for a closed session that night. The first will be about the City Hall renovations and the contract with Covarrubias and the second will be about Kelty and future council actions regarding his tenure as city manager.

17

57.    December 13, 2023, during Freeport City Council Special Meeting, Sam Reyna, a Freeport citizen, claims that Kelty, on July 19, 2023, negotiated a contract with Covarrubias for City Hall renovations in the amount of $1,085,000. He claims that a week later on July 26, 2023, Kelty made an unauthorized payment of $345,000 to Covarrubias because Covarrubias had explained that there was a seven-month lead time for large equipment needed for the renovation. Action taken resulting from the Closed Executive Session by City Council was a vote to terminate Tim Kelty. Vote was unanimously approved.

58.    After the December 13, 2023, City Council meeting, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page. The video consisted of his recording of the City Council meeting supplemented with Pena's personal commentary.

59.    On December 15, the Brazosport Facts published the following: Kelty, Freeport Separate as City Looks For New Manager

> With a 5-0 vote, Freeport cut Kelty loose following a closed session regarding his conduct in authorizing a $345,000 payment to Covarrubias for city hall renovations in July.
>
> Kelty's position with the city has been in doubt since it was revealed he authorized a $345,000 payment to Covarrubias in July to put toward renting equipment for it to undertake City Hall renovations. City Council awarded the Houston company a $1.085 million contract in April as the low bidder on the work.
>
> Per the contract between the city and Covarrubias, the contractor is responsible for providing a performance and payment bond to the city and is not allowed to do any work on the project until the city sends a notice to proceed. Both documents are required before any work can be done or payments can be made under terms of the agreement.
>
> The city had not posted the required bonds at the time Kelty authorized the payment, nor since. Freeport since has moved to terminated the contract with Covarrubias.
>
> For Matamoros, the deciding factor in voting to terminate Kelty's employment came not from the payment itself, but from the amount of time between when it was made and when the council was notified of the problem.

18

"We as council should have been made aware of it sooner," he said.

Councilman Winston Rossow also stated he thought Kelty had done a good job leading the city.

"I hate to see anybody lose their job, but the payment happened so it had to happen," Rossow said. "I know he did not maliciously do what he did, he just did not cross all his Ts and dot all his Is. It's his job to make sure all that's squared away."

Not including the situation with Covarrubias, Rossow said he thought Kelty was a good guy who had the city's best interests at heart.

60.    On December 17, 2023, Jeff Pena made the following publication on the "Jeff Pena For Freeport-Ward A" Facebook page: Statement made about sharing the link to all documents relative to Covarrubias and all those involved. https://drive.google.com/.../1U1f4GT5JikT-_fKjfg4ZX... When you click on the link you have to request access – controlled by Pena.



61.    At the December 18, 2023, Freeport City Council Regular Meeting, Melanie Oldham, a Freeport resident, claimed there was so much focus on the $345,000 but that very little remediation had been performed at City Hall. Manning Rollerson complains the $345,000 paid to Covarrubias was covered up like other instances of malfeasance in the past. Patti Richardson, another Freeport resident, claims City Council to be 100% unstable and that Kelty, Catherine Ezell, and Covarrubias still think they should be allowed to make more million-dollar mistakes after the approval of Covarrubias.

62. On December 18, 2023, Jeff Pena published five (5) separate video rants on "Jeff Pena For Freeport-Ward A" Facebook page. The recorded video of the City Council meeting was heavily edited, particularly those portions during Citizen Comments. Pena started a second video in which Melanie Oldham, a Freeport resident, claimed there was so much focus on the $345,000 but that very little remediation oversight; in which Nicole Morales called Pena a "monster" and "should go back where he came from." Pena posted a third video lasting one hour, four minutes and twenty two seconds (1:04:22).

63. On December 20, 2023, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page discussing a petition to have Ezell terminated; made commentary regarding the comments made by Nicole Morales at the December 18, 2023, City Council meeting; and commented on Ezell illegally wiring $345K. Pena additionally posted the following:



64. At the January 8, 2024, Freeport City Council Regular Meeting, Manning Rollerson states the separation package for Tim Kelty was due to the $345,000 paid to Covarrubias.

65. On January 22, 2024, David Luther, CLI, interviewed Catherine Ezell at Freeport City Hall regarding the accusations made against Councilman Pena.

20

66.    On January 25, 2024, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page questioning whether "Kelty's firing was "even legal or binding." Pena additionally stated that he had submitted a question to Olson & Olson, PLLC, the City Attorney, regarding the matter; spoke regarding the petition to have Catherine Ezell removed and for the removal of any other City Hall personnel who had participated in the coverup.

67.    On February 22, 2024, David Luther contacted Councilman Pena to arrange a date to interview him regarding the latest accusations made against him for his promoting a toxic work environment. Councilman Pena responded that he was available on March 6, 2024.

68.    March 4, 2024, during the Freeport City Council Regular Meeting, Councilman Pena claims that if one cannot get a contractor to get bonded, you should not hire them and certainly should not give them $345,000 or cover it up for two months. Pena then urges for the termination of Catherine Ezell, the City's Finance Director and calls the transfer approved by Tim Kelty an "illegal wire."

69.    On March 5, 2024, the Houston Landing, a newspaper, reported: Following Controversies Over Use of Funds, Freeport to Tighten Up Purchase Policies:

21

The city of Freeport voted to tighten up the city's purchasing policy on Monday following years of controversies over the use of public funds by local officials.

City Councilman Jeff Peña and other residents have been calling for more oversight of the city's spending practices after City Manager Tim Kelty was fired in December over an unauthorized payment to a contractor.

City officials said Kelty had wired more than $345,000 to Covarrubias Remodeling Service LLC, a contractor hired to renovate City Hall, to purchase equipment before the city had issued a notice to proceed with the renovation. According to the city's purchasing policy handbook, bidders are required to provide a performance and payment bond to ensure that they can pay for the cost and complete the requirements of the contract. At the time of the wire, Covarrubias had not provided these bonds, the Facts newspaper reported.

The payment was made to Covarrubias last July, but the revelation of the payment did not occur until months later in November.

Tim Kelty could not be immediately reached for comment.

Kelty's dismissal was the latest in a series of controversies at City Hall over the use of taxpayer dollars.

Since Kelty's dismissal, Peña said he doesn't trust the city's finance director, Ezell. For months, he has maintained that Ezell should be fired, along with Kelty, because she signed the $345,000 transfer to the contractor last year.

At Monday's meeting, Peña requested that the finance director and Petty be bonded to ensure the city would be able to get funds back if another unauthorized transfer were to be made.

70.   On March 5, 2024, Councilman Pena contacted David Luther asking to reschedule the March 6, 2024, interview. Pena claimed he had been advised to contact the Texas Municipal League ("TML"). Pena promised that he would contact Luther no later than March 7, 2024, to schedule a new meeting date. Pena failed to do so.

71.   On March 12, 2024, Luther met with Kasey Roman and her counsel.

72.   On March 27, 2024, David Luther contacted Councilman Pena again. Councilman Pena related that he was driving to San Antonio for a family funeral and a reset appointment was made for 10 a.m. on April 3, 2024.

73. During the April 1, 2024, Freeport City Council Regular Meeting,  Freeport citizen Pamela Dancy stated that while visiting a dog park in Lake Jackson, she was questioned by Lake Jackson residents regarding the wrongly released funds by Kelty.

74. On April 1, 2024, Jeff Pena published two video rants on "Jeff Pena For Freeport-Ward A" Facebook page regarding the $345K coverup, corruption, illegal wire transfer and coverup.

75. On April 3, 2024, Councilman Pena contacted David Luther asking to cancel that meeting. He stated that after a series of phone tags, he was waiting for TML attorneys to notify him whether they were going to defend him. The interview was postponed indefinitely and was never completed. Thus, the City of Freeport never addressed the hostile work environment issue.

76. April 15, 2024, during the Freeport City Council Regular Meeting, Councilman Pena reiterates that he urges an investigation of the Covarrubias matter.

77. On May 1, 2024, Jeff Pena published an additional video rant on "Jeff Pena For Freeport-Ward A" Facebook page regarding the $345K matter.

78. On September 25, 2024, Catherine Ezell resigned and executed a Non-Disclosure agreement with the City of Freeport. (Exhibit 1 – September 25, 2024 NDA.)

79. On September 30, 2024, City Manager Lance Petty reminded Councilman Pena in writing that Catherine Ezell's resignation included a Non-Disclosure Agreement which had been previously disclosed to City Council members in closed Executive Session.

80. During the October 21, 2024, Freeport City Council Regular Meeting, Councilman Pena intimated he believed that iAD participated in the coverup regarding the $345K transfer to Covarrubias.

81. November 4, 2024, during the Freeport City Council Regular Meeting, Brent Bowles, the architect with iAD, claimed to have been disturbed by Councilman Pena's comments that iAD were a part of the Covarrubias cover-up. Bowles claimed that his firm was unaware of the payment at the time it was made and therefore the payment was unauthorized by iAD. Mr. Bowles was clearly unaware that he had no authority, apparent or otherwise, to approve or deny any payments made by the City of Freeport to Covarrubias due to the lack of that requirement by the executed Contract drafted by Olson & Olson.

82. On November 5, 2024, the Brazosport Facts published:

> **FREEPORT** — Councilman Jeff Peña's words have caused friction in the working relationship the city has with iAD Architects.
>
> During the Oct. 21 meeting of the Freeport City Council, the Ward A councilman offered statements suggesting the architectural firm was part of a cover up involving an improper payment of $345,000 to Covarrubias during the city hall renovation project. He also questioned the firm's fee for architectural and engineering work on the Pixie Heritage House.
>
> Brent Bowles, iAD's owner and principal architect, spoke during citizen's comments to refute everything Peña said about the firm, provide documentation of the interactions between the firm and Covarrubias and demand an apology.

83. On November 11, 2024, during the Freeport City Council Special Meeting and following the council meeting, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page claiming that Mayor Cain had direct involvement in the payment to Covarrubias. He questioned whether Olson & Olson should be terminated for its role in the

coverup for months. Additionally, he complained that the investigation into the matter had been stalled.

84. On November 13, 2024, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page claiming crime and coverup of the Covarrubias case, that there was a coverup regarding the bidding process; issues with iAD and coverups by Olson & Olson.

85. On November 18, 2024, City Councilman Pena met with Freeport Police Chief Howell to inform her that, "I am coming down hard on Lance and Lance will be out of here soon. I wanted to make sure you are ready to take over."

86. At the November 18, 2024, Freeport City Council Regular Meeting, after Executive Session, the council voted unanimously to request proposals from the City's auditors and law firms to investigate the Covarrubias contract.

87. On November 19, 2024, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page stating there was a five month coverup and questioned who knew about the coverup – Bass, Cain, Olson & Olson. He also posted:

THE LOSSES KEEP ADDING UP!

$345,000.00  -- COVARUBIAS..
$11,000.00 -- PARKS DEPT LOSS
$8000.00 - IRS PAYROLL TAX LIEN
$25,000.00 - IRS UNREPORTED W-2'S

$300,000.00 OVERTIME LOSSES
NEGLECTED FOR MONTHS
too late. They knew about it long before.

88. On November 21, 2024, Jeff Pena published an update to the previous posting on "Jeff Pena For Freeport-Ward A" Facebook page.

> **THE LOSSES KEEP ADDING UP!**
>
> $345,000.00 -- COVARUBIAS COVER-UP
> $11,000.00 -- PARKS DEPT LOSS
> $8000.00 -- IRS TAX LIEN FINE
> $25,000.00 - IRS W-2 FINE
> $300,000.00 – OVERTIME LOSS
> ~$600,000.00 - WATERBILL COVER-UP
>
> ~$1,289,000.00 - LOST, UNREPORTED, COVERED-UP

89. On January 3, 2025, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page including remarks stating the illegal wire transfer of $345K were the reasons Tim Kelty and Catherine Ezell had been fired.

90. On January 6, 2025, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page including remarks stating the illegal wire transfer of $345K were the reasons Tim Kelty and Catherine Ezell had been fired.

91. On March 7, 2025, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page stating, "The second thing I want to mention is that it has been peddled by Petty over the last six months that he went to the DA and the Texas Rangers and that there was no credible evidence of his involvement with the stolen $345,000 by Covarrubias Construction. Well, I want to let you know that the packet of evidence that Petty prepared did not include a lot of details and testimony that in fact counters his claims of non-

26

involvement and raises more questions than he wants anybody to believe. I read the packet he provided, and I will post it. It's public information and to let me be clear, he was careful to exclude some very important details. So, I ask you if Petty put the packet together, excuse me, if Petty put the packet of info together for the Texas Rangers, do you actually think he would have actually included the materials that tie himself to the cover-up as well? Hell no, not at all. Let me just state  Covarrubias construction took $345,000 of illegally paid monies at the hands of Kelty and Ezell and Bass and Kane and Olson helped to cover it up for months."

92. On March 31, 2025, City Councilman Pena sent an email to City Attorney David Olson, Freeport Mayor, Jerry Cain, City Councilman Jarvis Davis, City Secretary Clarisa Fernandez, and Human Resources Director Jennifer Howell posing several questions including:

  a. Did Olson and Olson draft that Separation Agreement between the City of Freeport and Cathy Ezell?

  b. If so, when was it drafted and requested?

  c. Lastly, please send any documented communications or attempts to communicate with Mr. Thompson related to all legal matters between the City of Freeport and Lance Petty, or Cathy Ezell, or Covarrubias Construction.

MUNICIPAL LIABILITY ALLEGATIONS

93. The City of Freeport, Texas adopted a Home Rule Charter in accordance with the statutes of the State of Texas. The municipal government is known as a council-manager

27

government. All powers of the City are vested in the City Council which enact local legislation, adopt budgets and appoint the City Manager who in turn is tasked with the execution of laws and the administration of city government. Freeport, Tex, Rev. Ordinances, pt. 1, art. 1, § 1.01.

94. The legislative and governing body of the City of Freeport, Texas, shall be known as "The City Council of the City of Freeport, Texas" and shall be composed of a mayor and four council members. The mayor shall be the presiding officer of the city council and shall be recognized as the head of the city government for all ceremonial purposes and by the governor for purposes of military law but shall have no regular administrative duties. The mayor must vote on all matters under consideration by the city council, except as provided in section 3.10 of this Charter. The mayor shall not have the power of veto. Freeport, Tex, Rev. Ordinances, pt. 1, art. 3, § 3.01(a).

95. All members of the city council shall be subject to removal from office under the terms and conditions of the recall provisions of this Charter. Freeport, Tex, Rev. Ordinances, pt. 1, art. 3, § 3.01(e).

96. The determination of all matters of policy and the exercise of all powers of local self-government shall be vested in the city council. By way of illustration, but not limitation, the following enumerated powers are among these powers that may be exercised by the city council:

97. Power to remove from office in city government, any officer or member of any board or commission but shall not have the authority to remove any employee from the employment of the city government, except the city manager; Freeport, Tex, Rev. Ordinances, pt. 1, art. 3, § 3.07(a).

28

98. For liability to attach to the city council as a whole, there must be a causal connection or affirmative link between the action complained about and the official sued. This means the council must have known about, facilitated, approved, condoned, or turned a blind eye to the conduct causing the constitutional deprivation.

99. "From the time the Plaintiff read her letter to City Council on November 6, 2023, and September 25, 2024, the day of Plaintiff's resignation, Councilman Pena refused to co-operate with Investigator Luther. The City of Freeport refused to affirmatively act for 324 days. The City Council's deliberate refusal to act, despite actual and repeated notice, constituted ratification of unconstitutional conduct and was the **moving force** behind Plaintiff's constructive discharge. In other words, they waited her out. The Council is the final policymaker for discipline under Charter § 3.07(a). Its deliberate refusal, despite actual notice of Pena's ongoing First-Amendment retaliation and defamation, ratified the misconduct and directly precipitated Ezell's forced resignation on Sept 25, 2024."

100. Plaintiff Catherine Ezell was constructively discharged from her employment by the City of Freeport on September 25, 2024, as a direct and foreseeable result of a sustained public defamation campaign led by Councilman Jeffrey Michael Pena. Acting under color of law and using official channels, Councilman Pena repeatedly and publicly accused Ezell of participating in an illegal wire transfer of public funds—an accusation known by both Pena and the City Council to be false. These accusations were made via social media under the official imprimatur of Pena's position and repeated in open Council meetings, online videos, and public statements. These actions created a climate of public condemnation so

severe and reputationally damaging that no reasonable employee in Ezell's position could be expected to continue in her role.

101. The defamatory statements were not isolated or speculative; they directly linked Ezell's professional identity to alleged criminal conduct and rendered her continued employment untenable. Plaintiff's resignation occurred in the context of repeated failures by the City Council to investigate, reprimand, or curtail Councilman Pena's misconduct, despite formal complaints by Ezell and other city employees. The City's prolonged inaction amounted to ratification of the falsehoods and constituted deliberate indifference to Ezell's constitutional rights.

102. As a result, Plaintiff was deprived of her liberty interest in her professional reputation, her continued public employment, and the opportunity to clear her name through appropriate procedural channels. Her resignation was not voluntary, but was coerced by the intolerable and defamatory environment cultivated and endorsed by official actors. Plaintiff therefore alleges constructive discharge under both Texas common law and the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

103.

104. The Freeport City Charter's assignation to the City Council as the chief policymaker virtually settles the issue as to the identity of the chief policymaker. When assessing the resulting failure to act to protect the civil rights of Catherine Ezell and others, it matters little whether its members facilitated, approved, condoned, or turned a blind eye to the conduct causing the constitutional deprivation. Its failure to act is incontrovertible.

## COUNT ONE

## BREACH OF CONTRACT

*(Against The City of Freeport, Texas)*

105.   Plaintiff acknowledged receipt of Defendant, City of Freeport's Non-Disclosure Agreement on September 25, 2024. Pursuant to that contract, Catherine Ezell resigned her employment that same day, thereby executing the Agreement. This agreement was contractual in nature. Specifically, section 12 states "The undersigned has carefully read this Release, and it contains the entire agreement between the parties hereto; its terms are contractual and are not mere recitals; and the undersigned specifically represents that she knows the contents and effects hereof and that she executes this Agreement of Settlement and Release of her own free will and as her own act and deed."

106.   The terms of that Non-Disclosure Agreement included mutual non-disparagement clauses. Specifically, section 8 states, "Further Ezell agrees not to defame, slander, libel, disparage or make defamatory or derogatory statements about the City, its administrators, its employees, or its agents. This prohibition includes, but is not limited to, statements to the media, City employees, City agents, and citizens, whether those statements are made personally or on social media sites, after the Effective Date of this Agreement. Similarly, the City agrees that no management level employee of the City will defame, slander, libel, disparage or make any defamatory or derogatory statements about Ezell. This prohibition includes, but is not limited to, statements to the media, City employees, City agents, and citizens, whether those statements are made personally or on social media sites, after the Effective Date of this Release. This does not include an agreement to withhold any statements to law enforcement or other information required by law to be released."

107.    Jeffrey Michael Pena, a Freeport, Texas City Councilman,  disclosed the contents of the Non-Disclosure Agreement multiple times. Additionally, he attributed the terms of her

31

resignation representing an illegal act. This was a known falsehood and a direct violation of the City's non-disparagement terms.

108. The website from which Jeffrey Michael Pena published his rants and assaults on the civil rights of the Plaintiff was clearly meant to impute that Pena spoke under the authority of his office, and thus with the City's approval.

109. Although not a signatory, Defendant Peña is a final policymaker whose conduct and speech was expressly subject to the mutual non-disparagement provisions of the Agreement, which the City Council reviewed in executive session.

110. All City Council Members and the City Attorney were aware of Pena's postings and by doing nothing, assented their approval.

111. The Freeport City Council members are the final policy makers of the entity.

112. Because Councilman Pena was acting with access to official records and in his capacity as a policymaker, the City is jointly liable for his breach of the non-disparagement clause.

113. As a City Councilman, Jeffrey Michael Pena had access to the Non-Disclosure Agreement, a confidential document not available to the public. Jeffrey Michael Pena's, belief that his elected position as a City Councilman and poorly reasoned view of the First Amendment's Free Speech Clause protected any penalty for the violation of the Non-Disclosure Agreement.

114. As a result of this violation, Catherine Ezell suffered accusations so damaging that she must bear the stigma of those improper accusations for the rest of her professional life. She has been both reputationally and financially damaged as a result of Councilman Pena's actions. Due to the City's knowledge of this action and its failure to discipline Councilman Pena, a procedure available through both the City's Charter and the Texas Local

Government Code, it cannot be argued that these acts were acceptable to the City of Freeport.

115. The City of Freeport entered into a written Agreement of Release and Settlement with Plaintiff Catherine Ezell on September 25, 2024. This agreement was supported by mutual consideration: Plaintiff agreed to resign from her position as Finance Director, release all known and unknown claims against the City—including but not limited to Title VII, ADA, and Texas Labor Code claims—and further agreed to binding non-disparagement and confidentiality provisions. In return, the City agreed to provide a lump sum monetary payment of $26,584.83, equivalent to salary, vacation, and other accrued benefits. The agreement explicitly provides that it is contractual in nature, enforceable in court, and represents a full compromise and settlement of potential litigation. As such, it constitutes a contract for the provision of valuable services to the City within the meaning of Tex. Loc. Gov't Code § 271.152. The City benefited materially from Plaintiff's performance under the contract, including her waiver of legal rights and her silence on matters that would otherwise be the subject of litigation or public scrutiny. Accordingly, governmental immunity from suit is waived, and Plaintiff is entitled to pursue her breach of contract claim under Texas law.

116. This Agreement constitutes a written contract for the provision of services, within the meaning of Texas Local Government Code § 271.152, as interpreted by *City of Houston v. Williams*, 353 S.W.3d 128 (Tex. 2011). Plaintiff's resignation, waiver of litigation, and agreement to confidentiality constituted valuable services to the City—specifically, the avoidance of litigation and reputational harm. Accordingly, the City's immunity from suit is waived.

COUNT TWO
42 U.S.C. § 1983 – VIOLATION OF FOURTEENTH
AMENDMENT DUE PROCESS RIGHTS
(Against All Defendants)

117.   Plaintiff Catherine Ezell brings this claim under 42 U.S.C. § 1983 for violation of her rights under the Fourteenth Amendment to the United States Constitution. A. Deprivation of Liberty Interest – "Stigma Plus"

118.   Defendants, acting under color of state law, deprived Plaintiff of her liberty interest in reputation coupled with the tangible loss of her employment. It is well-settled that the Constitution protects a liberty interest where a public employee is defamed in connection with the termination of employment, often referred to as the "stigma-plus" doctrine. No reasonable official could believe that the blocking of a citizen from a government-branded Facebook page for disagreeing views, or the publication of knowingly false, reputation-destroying criminal accusations about a subordinate was constitutionally protected conduct. The rights at issue were clearly established at the time of the conduct, as held in *Paul v. Davis*, 424 U.S. 693 (1976); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019); *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir, 1997) (liberty interest in reputation  when termination is accompanied by stigma).

119.   Here, Councilman Jeff Pena, acting under color of law and with access to confidential City documents, repeatedly accused Plaintiff publicly of committing a crime—namely, facilitating an "illegal wire transfer"—in connection with her role as Finance Director. These statements were made via social media platforms where Pena was clearly acting in his official capacity, using his title, City Hall address, and official resources.

120.   These accusations were:

- False;

34

- Publicly disseminated;

- Made with malice;

- Directly linked to Plaintiff's resignation under duress.

121. The statements and surrounding conduct created a stigma that severely impaired Plaintiff's future employment prospects, thereby depriving her of a constitutionally protected liberty interest without procedural safeguards.

122. The Fourteenth Amendment requires that, prior to the deprivation of liberty or property, a public employee be given:

1. Oral or written notice of the allegations;

2. An explanation of the employer's evidence; and

3. An opportunity to respond.

123. Plaintiff does not assert a protected property interest in this case.

124. Here, Plaintiff received *no such notice or hearing*. Instead, she was subjected to a continuous campaign of public defamation and was constructively discharged through the City's deliberate inaction and ratification of Councilman Pena's misconduct.

D. Municipal Liability under Monell

125. The City of Freeport is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the violations described herein were the result of the City's official policy or custom, including:

- The City Council's deliberate failure to discipline or restrain Councilman Pena despite repeated notice of unconstitutional conduct;

- The ratification by final policymakers (City Council) of the defamatory acts and retaliatory behavior;

- The existence of a de facto policy of allowing public officials to misuse their positions for personal vendettas without consequence.

126.    The City Council, as final policymaker under the Freeport City Charter, took no corrective action despite repeated pleas from Plaintiff and others. This deliberate indifference directly resulted in Plaintiff's constitutional deprivations.

E. Damages

As a result of these constitutional violations, Plaintiff suffered:

- Reputational harm;

- Loss of employment and associated income;

- Emotional distress;

- Loss of future earning capacity. Plaintiff made formal requests for disciplinary review at open meetings and in writing, and the Council either failed to agendize those requests or actively declined to act.

127.    The rights at issue—Plaintiff's liberty interest in reputation, her right to be free from stigmatizing falsehoods published by government actors, and her right to participate in a designated public forum—were clearly established at the time of the conduct. No objectively reasonable official in Councilman Pena's position could have believed that repeatedly publishing knowingly false accusations of criminal conduct or deleting opposing views on an official city-branded platform was constitutional.

128.    Plaintiff seeks compensatory damages, attorney's fees under 42 U.S.C. § 1988, and all other relief to which she is entitled under law and equity.

COUNT THREE

42 U.S.C. § 1983, FIRST, AND FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION

*(Against All Defendants)*

129.    The Facebook page maintained by Councilman Pena lists as "Jeff Pena for Freeport –
Ward A" and lists him as a public figure. This page is one from which Councilman Pena
speaks with apparent authority of a representative of the city. Note: The Councilman
uses the address of 200 W. 2nd, Freeport, Texas, which is the address of the Freeport City
Hall and also uses an email address representative of his council position. Councilman
Pena's Intro states "My primary objective is to ensure the City of Freeport's Interests are
Protected and Served, First"



130.    Councilman Pena is the governmental official who has control and uses his Facebook page
for official purposes.

131.    The Facebook page "Jeff Pena for Freeport – Ward A" is not merely a campaign or personal
account. It uses the City's official address, is operated during his term of office, and has
been repeatedly referenced in City business (including meeting announcements, policy
updates, and official statements). This consistent usage renders the page a designated public

forum under the First Amendment. The City's failure to prohibit or correct its usage confirms its adoption as an official forum.

132.   The Facebook page is maintained under **color of state law**, and Councilman Pena exercises editorial discretion over who may post or comment, restricting only those who disagree with his views. These practices violate clearly established First Amendment law, as recognized in *Knight First Amendment Inst. v. Trump*, 928 F.3d 226 (2d Cir. 2019), and *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019).

133.   Councilman Pena has deleted comment by the Plaintiff, Catherine Ezell and barred her access to that public forum.

134.   In doing so, Councilman Pena has restricted the Plaintiff's access to be heard in that public forum for which she could have the opportunity to make comment.

135.   The rights at issue—Plaintiff's liberty interest in reputation, her right to be free from stigmatizing falsehoods published by government actors, and her right to participate in a designated public forum—were clearly established at the time of the conduct. No objectively reasonable official in Councilman Pena's position could have believed that repeatedly publishing knowingly false accusations of criminal conduct or deleting opposing views on an official city-branded platform was constitutional.

136.   No reasonable official could believe that the blocking of a citizen from a government-branded Facebook page for disagreeing views, or the publication of knowingly false, reputation-destroying criminal accusations about a subordinate was constitutionally protected conduct. The rights at issue were clearly established at the time of the conduct, as held in *Paul v. Davis*, 424 U.S. 693 (1976); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019).

137. Such restriction directly violated Plaintiff's First Amendment right to speak in a designated public forum, particularly in response to false and stigmatizing official commentary.

## COUNT FOUR
## DEFAMATION
*(Against All Defendants)*

138. Councilman Pena's statements have been published in both written and verbal formats.

139. Defamatory Statements

   a. On October 4, 2023, Councilman Pena made a false posting on Facebook stating that Catherine Ezell had altered a contract between Starbucks and the Freeport Economic Development Corporation.

   b. On November 21, 2023, City Councilman Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A", a Facebook page managed and controlled by City Councilman Jeff Pena, stating again that Tim Kelty, the City Manager, and Catherine Ezell, had made an illegal wire transfer to Covarrubias.

   c. On November 25, 2023, claimed that Tim Kelty and Catherine Ezell knowingly lied "from October 16th until now."

   d. On December 20, 2023, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page discussing a petition to have Ezell terminated; made commentary regarding the comments made by Nicole Morales at the December 18, 2023, City Council meeting; and commented on Ezell illegally wiring $345K. Pena additionally posted the following:

   e.



f.  March 4, 2024, during the Freeport City Council Regular Meeting, Councilman Pena claims that if one cannot get a contractor to get bonded, you should not hire them and certainly should not give them $345,000 or cover it up for two months. Pena then urges for the termination of Catherine Ezell, the City's Finance Director and calls the transfer approved by Tim Kelty an "illegal wire."

g.  On September 30, 2024, five days after her resignation, Councilman Pena disclosed the non-disclosure agreement on his Facebook account.

140.  On November 19, 2024, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page stating there was a five month coverup and questioned who knew about the coverup – Bass, Cain, Olson & Olson. He also posted:

THE LOSSES KEEP ADDING UP!

$345,000.00  -- COVARUBIAS..
$11,000.00 -- PARKS DEPT LOSS
$8000.00 - IRS PAYROLL TAX LIEN
$25,000.00 - IRS UNREPORTED W-2'S

$300,000.00 OVERTIME LOSSES
NEGLECTED FOR MONTHS
too late. They knew about it long before.

40

141.    On November 21, 2024, Jeff Pena published an update to the previous posting on "Jeff Pena For Freeport-Ward A" Facebook page.

THE LOSSES KEEP ADDING UP!

$345,000.00 -- COVARUBIAS COVER-UP
$11,000.00 -- PARKS DEPT LOSS
$8000.00 -- IRS TAX LIEN FINE
$25,000.00 - IRS W-2 FINE
$300,000.00 – OVERTIME LOSS
~$600,000.00 - WATERBILL COVER-UP

~$1,289,000.00 - LOST, UNREPORTED. COVERED-UP

142.    On January 3, 2025, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page including remarks stating the illegal wire transfer of $345K were the reasons Tim Kelty and Catherine Ezell had been fired.

143.    On January 6, 2025, Jeff Pena published a video rant on "Jeff Pena For Freeport-Ward A" Facebook page including remarks stating the illegal wire transfer of $345K were the reasons Tim Kelty and Catherine Ezell had been fired.

    h.    A substantial number of comments of the same type continue to be published.

    i.    Councilman Pena's repeated public statements that Plaintiff committed a criminal act—statements he knew were false—constitute defamation per se under Texas law and are independently actionable by Plaintiff.

144.    Knowledge of Falsity and Malice

41

    a.  Councilman Pena was fully aware of the falsehood of these statements because he sat in on closed sessions of City Council meetings.

    b.  In fact, all members of the Freeport City Council were aware of the falsehood. They failed to respond, allowing the public to believe the accusations were true.

    c.  Pena was also aware that Catherine Ezell was not fired for a financial impropriety.

145.    Lack of Privilege and Publication Contexts

    a.  While some statements were made during council sessions, the bulk of the defamatory statements were published in unprivileged settings, including public Facebook posts and press interviews. Even if any qualified privilege applied, such privilege is vitiated by Pena's actual malice, as he repeated these accusations after being made aware they were false.

146.    Damages and Reputational Harm

    a.  The Plaintiff has cultivated a decades-long career of success. Due to Councilman Pena's behavior , much of that reputation lies tarnished.

    b.  As a result of Councilman Pena's malicious acts, the Plaintiff has lost substantial standing in the community and is now limited to lesser roles of employment.

    c.  The citizen's comments made during City Council Meetings clearly indicate some citizens have been affected by Councilman Pena's malice. This is likewise true in the local printed press.

147.    City's Ratification and Liability

    a.  Because Pena's statements were made in his capacity as a sitting council member, and because the City Council—acting as the City's final policymaker—

**ratified and tolerated** this conduct despite repeated notice, the **City of Freeport is liable** for the resulting harm.

148. Councilman Pena knew that his statements were false. Councilman Pena claimed on an almost daily basis to have written and verified truth of his accusations, claiming "he just couldn't show anyone just yet." After two years, he has proffered nothing.

City Councilman Pena's accusations were made with malice.

149. The City Council of Freeport, Texas accepted Councilman Pena's continued deprivations of Ms. Ezell's constitutional rights willingly, thereby acquiescing to his defamatory remarks.

150. It is clear that Councilman Pena made these assertions as fact, not of opinion, and made with malice,

151. The accusations by Councilman Pena were defamation per se.

DAMAGES

152. Plaintiff seeks both special damages and exemplary damages, which are legally distinct. Special damages refer to actual, pecuniary losses that can be measured and proven, including loss of income, loss of future earning capacity, and other quantifiable economic harm resulting from the conduct of the Defendants. In contrast, exemplary damages are punitive in nature and are not intended to compensate Plaintiff, but rather to punish egregious, malicious conduct and to deter future misconduct. Plaintiff seeks exemplary damages solely against Defendant Jeffrey Michael Pena in his individual capacity, based on his knowingly false, malicious, and repeated publication of defamatory statements. No exemplary damages are sought against the City of Freeport, consistent with the limitations

imposed by *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), and Tex. Civ. Prac. & Rem. Code § 41.005.

153.   As a result of Defendants' violations as set out in the foregoing paragraphs,  Plaintiff Catherine Ezell has sustained general damages.

154.   Plaintiff Catherine Ezell's general damages flow directly from and are the natural and probable consequences of the Defendants' violations and are within the jurisdictional limits of the Court.

155.   As a result of Defendants' violations, as set out in the foregoing paragraphs, Plaintiff Catherine Ezell has sustained special damages in the amount of $1,110,000.

156.   The special damages suffered by Plaintiff Catherine Ezell include, but are not necessarily limited to, financial losses due to reduced income.

157.   These damages were foreseeable and were caused in fact by Defendants' violations and were within the contemplation of the parties.

158.   The Defendant Jeffrey Michael Pena's violations in each of these matters occurred with an aggravated degree of malice.

159.   From the Defendant Jeffrey Michael Pena, individually, the plaintiff seeks exemplary damages in accordance with Tex. Civ. Prac. & Rem. Code § 41.003. Defendant Pena acted with **malice** as defined in Texas Pattern Jury Charge 110.22 and Tex. Civ. Prac. & Rem. Code § 41.001(7) in that he published knowingly false and defamatory statements with the specific intent to cause substantial reputational and economic harm to Plaintiff. Accordingly, Plaintiff seeks exemplary damages under § 41.003(a).

### ATTORNEYS' FEES

160.   Plaintiff Catherine Ezell realleges and incorporates by reference the allegations contained in the foregoing paragraphs above, as if fully set forth herein.

44

161.    Plaintiff seeks recovery of reasonable and necessary attorney fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and any other applicable law. Plaintiff's attorney has agreed to represent Plaintiff on a contingency fee basis, wherein counsel's compensation is contingent upon the recovery obtained in this case. To the extent immunity is waived under Texas Local Government Code § 271.152 or to the extent otherwise permitted by law, Plaintiff seeks attorneys' fees accordingly.

162.    As required under Texas law and applicable precedent, including *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), Plaintiff will provide evidence demonstrating:

1.  The reasonableness and necessity of the attorney's fees incurred;

2.  The customary fees for similar legal services in the community;

3.  The time, labor, and skill required for the representation; and

4.  The results obtained through counsel's representation.

## JURY DEMAND

163.    Plaintiff respectfully demands trial by jury on all claims so triable.

## PRAYER FOR RELIEF

Plaintiff sues Defendant Pena in his individual capacity for damages under 42 U.S.C. § 1983 and for defamation per se, and in his official capacity for declaratory and injunctive relief. All other defendants are sued in their official capacities only, consistent with claims for municipal liability under *Monell*.

Plaintiff seeks a declaratory judgment that Councilman Pena's public statements exceeded his lawful authority and violated her constitutional rights, and an injunction prohibiting him from further defamatory publication while acting under color of law and that Councilman Peña's conduct, in using city-controlled social media platforms to make false accusations of criminal conduct after execution of the NDA, violated Plaintiff's First and Fourteenth Amendment rights..

Plaintiff further seeks injunctive relief prohibiting Defendant Peña, in his official capacity, from making future defamatory statements concerning Plaintiff while acting under color of law, and from blocking her participation in official public forums managed through city-identified social media.

A permanent injunction enjoining Defendant Peña, in his official capacity, from further defamatory statements regarding Plaintiff made under color of law or via official forums, including social media platforms controlled by the City.

FOR THESE REASONS, Plaintiff Catherine Ezell respectfully requests that all Defendants be cited to appear and answer, and that upon a final hearing of this matter, the Court enter judgment in favor of Plaintiff Catherine Ezell and against Defendants, and award to Plaintiff Catherine Ezell her actual damages as described above in an amount to be determined at trial, and special and exemplary damages as requested above, attorneys' fees as described above, as well as prejudgment and post-judgment interest at the maximum rate allowed by law, costs, and such other and further relief to which Plaintiff Catherine Ezell may be entitled at law or in equity.

Respectfully submitted,

By: */s/ Clay Dean Thomas*
      Clay Dean Thomas
      State Bar No. 24088520

      Clay Thomas PLLC
      15344 West State Highway 21
      Douglass, TX 75943

46

Tel: (936) 715-7144
Fax: (979) 773-5055
clay.thomas@claythomaspc.com
Attorney for Plaintiff